NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

DEC 30 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 24-1684 |
| Plaintiff - Appellee, | D.C. No. 2:05-cr-00578-JFW-37 |
| v. | |
| JOSE LUIS MEJIA, AKA Cheech, AKA Seal KK, | MEMORANDUM[*] |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 24-1685 |
| Plaintiff - Appellee, | D.C. No. 2:05-cr-00578-JFW-31 |
| v. | |
| ERNESTO OROZCO MENDEZ, AKA Seal EE, AKA Gordo, | |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 24-1687 |
| Plaintiff - Appellee, | D.C. No. 2:05-cr-00578-JFW-22 |
| v. | |
| GILBERTO CARRASCO, AKA Beto, | |

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

AKA Seal V,

Defendant - Appellant.

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MANUEL YEPIZ, AKA Martin Sanchez,
AKA Seal G, AKA Pony,

Defendant - Appellant.

No. 24-1688

D.C. No.
2:05-cr-00578-JFW-7

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

FRANCISCO ZAMBRANO, AKA Seal II,
AKA Noc,

Defendant - Appellant.

No. 24-1690

D.C. No.
2:05-cr-00578-JFW-35

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RAFAEL YEPIZ, AKA Seal A, AKA
Sneaky, AKA Ralph,

Defendant - Appellant.

No. 24-1691

D.C. No.
2:05-cr-00578-JFW-1

UNITED STATES OF AMERICA,

No. 24-1709

2

24-1684

|  |  |
|---|---|
| Plaintiff - Appellee, | D.C. No. |
|  | 2:05-cr-00578-JFW-21 |
| v. |  |
|  |  |
| JESUS CONTRERAS, AKA Seal U, AKA Yuck, |  |
|  |  |
| Defendant - Appellant. |  |

| UNITED STATES OF AMERICA, | No. 24-1784 |
|---|---|
| Plaintiff - Appellee, | D.C. No. |
|  | 2:05-cr-00578-JFW-44 |
| v. |  |
| MARIANO MEZA, AKA Durango, |  |
| Defendant - Appellant. |  |

| UNITED STATES OF AMERICA, | No. 24-1915 |
|---|---|
| Plaintiff - Appellee, | D.C. No. |
|  | 2:05-cr-00578-JFW-36 |
| v. |  |
| SERGIO MEJIA, AKA Seal JJ, AKA Jaws, |  |
| Defendant - Appellant. |  |

Appeal from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted December 11, 2025
Pasadena, California

Before: M. SMITH, CHRISTEN, and FORREST, Circuit Judges.

Following remand from our court, Defendants Jose Luis Mejia, Ernesto

Orozco Mendez, Gilberto Carrasco, Manuel Yepiz, Francisco Zambrano, Rafael Yepiz, Jesus Contreras, Mariano Meza, and Sergio Mejia appeal the district court's order denying their motion for an evidentiary hearing and relief pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). Because the parties are familiar with the facts, we do not recount them here. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo the district court's "denial of a motion for a new trial arising from the government's" *Brady* obligation. *United States v. Bruce*, 984 F.3d 884, 890 (9th Cir. 2021).[1] We review questions of law de novo and factual findings for clear error. *United States v. Cloud*, 102 F.4th 968, 975–76 (9th Cir. 2024). We review the district court's denial of an evidentiary hearing for abuse of discretion. *United States v. Olsen*, 704 F.3d 1172, 1178 (9th Cir. 2013). We affirm.

1. To obtain a new trial because of a *Brady* violation, a defendant must show: "(1) the evidence at issue was favorable to him, either because it was exculpatory or impeaching; (2) the evidence was suppressed by the State, either willfully or inadvertently; and (3) that he was prejudiced." *Bruce*, 984 F.3d at 894–95. Defendants argue the government failed to disclose that its witness Victor Bugarin: (i) received monetary benefits, including $5,000 in relocation costs for an

---

[1] *Bruce* recognized "some tension in our case law" with respect to the standard of review applicable to motions for a new trial based on *Brady*. *Bruce*, 984 F.3d at 890 n.1. As in *Bruce*, we need not address that tension because "[t]he outcome here does not depend on the standard of review." *Id.*

unrelated case, approximately $620 in expense reimbursements, and roughly $500 in payments for information; (ii) was promised consideration in his brother's sentencing in exchange for information about street gangs; (iii) had a history of drug use; and (iv) was criticized by law enforcement for his lack of candor. We conclude that the government improperly suppressed impeachment evidence, but that there was no prejudice to Defendants.

We begin with the first two *Brady* elements. Although the undisclosed evidence at issue here is facially impeaching, the government contends that some of it either was not "suppressed" because it was in the possession of state or local law enforcement, not the federal government, or was not "favorable" because it lacked sufficient impeachment value. We reject these arguments.

First, because the government plainly knew of Bugarin's prior cooperation with state and local authorities—a fact to which Bugarin testified—it could have learned about the relevant payments from the California Bureau of Narcotics Enforcement and the Santa Barbara Police Department. *See United States v. Price*, 566 F.3d 900, 909–10 (9th Cir. 2009).

Second, "it 'is not the role of the prosecutor to decide that facially exculpatory evidence need not be turned over because the prosecutor thinks the information is false' or has diminished probative value." *Cloud*, 102 F.4th at 977 (citation omitted). Even if Bugarin ultimately was "unhappy with the

consideration" his brother received, that he was willing to trade information for favorable consideration at his brother's sentencing clearly had impeachment value because it shows that Bugarin was willing to work for the government in exchange for benefits that he anticipated would be of value to him. *See id.* Similarly, even if the government believed that the statement regarding Bugarin's prior drug use was false and would have been neutralized by the testimony of the law enforcement officer who wrote the statement, or that the statement concerning Bugarin's credibility was equivocal and undercut by contrary statements in the same document, this evidence had *some* impeachment value. The government was therefore required to turn it over. *Id.*

Turning to prejudice, "[t]he touchstone of the prejudice analysis is whether admission of the suppressed evidence would have created a reasonable probability of a different result." *Price*, 566 F.3d at 911 (citation modified). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial," is not sufficient. *Barker v. Fleming*, 423 F.3d 1085, 1099 (9th Cir. 2005) (citation omitted). Defendants fail to meet this threshold.

The undisclosed evidence was cumulative of the substantial impeachment introduced at trial. *See United States v. Wilkes*, 662 F.3d 524, 536 (9th Cir. 2011) ("Evidence is cumulative . . . if the grounds for impeachment are no secret to the

jury." (citation modified)).  Bugarin's credibility was attacked at trial by evidence that he: (i) received immunity for his testimony; (ii) received $5,000 in relocation expenses in connection with this case; (iii) cooperated with state and federal authorities and had received a more lenient sentence in exchange for his cooperation; and (iv) had been a drug dealer for years and sought to help the Mexican Mafia murder a leader of the Vineland Boys (VBS) gang.  The undisclosed evidence is unlikely to have changed the jury's verdict because its modest probative value would have been eclipsed by the considerable impeachment evidence that was introduced at trial, which was of a similar nature to the undisclosed evidence.  *See Heishman v. Ayers*, 621 F.3d 1030, 1035 (9th Cir. 2010) (noting that undisclosed evidence may not be prejudicial if it is "similar to and cumulative of . . . extremely thorough impeachment" evidence that was introduced at trial).

The testimony Bugarin provided was also "cumulative to the testimony of a number of the government's other witnesses."  *United States v. Croft*, 124 F.3d 1109, 1124 (9th Cir. 1997); *see also Wilkes*, 662 F.3d at 536.  Bugarin testified that he coordinated activities between the Mexican Mafia and VBS, collected taxes from VBS on the Mexican Mafia's behalf, and was aware of the power struggles within VBS's leadership.  This evidence was not "central" to the government's case, *Horton v. Mayle*, 408 F.3d 570, 578–79 (9th Cir. 2005), and it primarily

served to establish that VBS was an enterprise under the Racketeer Influenced and Corrupt Organizations (RICO) Act—an issue amply discussed by other witnesses. The district judge, who both presided over the trial and decided the order presently on appeal, remarked during the 2006 trial: "[Q]uite frankly, I don't think [Bugarin's] testimony is . . . that remarkable." On this record, we conclude that the undisclosed evidence is unlikely to have changed the jury's verdict.[2]

2. The decision whether to hold an evidentiary hearing on a motion for a new trial is "within the sound discretion of the trial court." *United States v. Del Muro*, 87 F.3d 1078, 1080 n.3 (9th Cir. 1996) (citation omitted).[3] Defendants argue that an evidentiary hearing might have revealed additional benefits Bugarin received, but such speculation does not warrant an evidentiary hearing. *See*

---

[2] Separately, we conclude that the district court followed our remand instruction by "engag[ing] in the necessary factfinding to ascertain whether [Bugarin] received benefits that were undisclosed to defendants at the time of trial" and determining "whether *Brady* was violated as to each convicted count." *United States v. Yepiz*, 718 F. App'x 456, 467 (9th Cir. 2017). We also conclude that Defendants' allegations of bad faith fall well short of showing that the government made a "deliberate and strategic decision" to "conceal[]" evidence from the jury. *Silva v. Brown*, 416 F.3d 980, 990 (9th Cir. 2005).

[3] We recognize that in proceedings brought pursuant to 28 U.S.C. § 2255, "the district court 'shall' grant an evidentiary hearing 'unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *United States v. Rodriguez*, 49 F.4th 1205, 1213 (9th Cir. 2022) (citation modified) (quoting § 2255(b)). That presumption does not apply here because Defendants did not file a § 2255 motion and instead elected to pursue their *Brady* claim on direct appeal. *Yepiz*, 718 F. App'x at 466.

*Morgan v. Gonzales*, 495 F.3d 1084, 1091 (9th Cir. 2007). Defendants also contend that an evidentiary hearing was warranted to resolve whether the statement about Bugarin's drug use was a clerical error. But the district court reasonably concluded that the marginal impeachment value of that statement would have been significantly nullified by evidence the government could have introduced to rebut it. Moreover, even assuming that an evidentiary hearing could have produced evidence showing that Bugarin had used drugs at some point in the past, the cumulative value of this additional impeachment evidence falls well short of satisfying *Brady*'s materiality threshold. In light of the written record generated by the government's exhaustive investigation, the district court did not abuse its discretion by declining to hold an evidentiary hearing.

**AFFIRMED.**